IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | | |
|---|---|---|
| **EUCLID CENTER, L.P.,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:11CV00024 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **K-VA-T FOOD STORES, INC.,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| | ) | |
| Defendant. | ) | |

*Mark M. Lawson and R. Lucas Hobbs, Elliott Lawson & Minor, P.C., Bristol, Virginia, for Plaintiff; Roy M. Jessee, Mullins, Harris & Jessee, Norton, Virginia, for Defendant.*

In this diversity action under the Federal Arbitration Act, the plaintiff has requested that I compel arbitration as required in a lease agreement between the parties. The defendant has opposed arbitration. I will order that the parties arbitrate the issue involved.

I

The plaintiff, Euclid Center, L.P. ("Euclid"), owns real property known as the Euclid Avenue Shopping Center ("Shopping Center") in Bristol, Virginia. The defendant, K-VA-T Food Stores, Inc. ("K-VA-T") leases space ("Leased

Premises") in the Shopping Center, where it operates a "Food City" brand supermarket (the "Food City store"). The parties are successors in interest to a lease that outlines the terms of their relationship.[1] Euclid alleges that the Food City store is the "anchor tenant" of the Shopping Center.

K-VA-T has announced its intention to move the Food City store from the Shopping Center to an offsite a short distance away. Euclid alleges in its Complaint/Petition to Compel Arbitration ("Complaint") that K-VA-T will cease operation of the Leased Premises as a food supermarket and that the threatened action would be a breach of the Lease, which allegedly imposes a covenant of continuous operation. To resolve the disagreement, Euclid asserts that the matter should be referred to arbitration. As far as arbitration is concerned, the Lease provides:

> In the event there should arise any misunderstanding between the parties hereto as to the compliance with the terms and conditions of this lease upon the part of either of the parties hereto, or as to whether the Tenant's store building tendered by the Landlord has been improved in substantial conformity with the plans and specifications approved by the parties, or whether the common areas, including parting area, comply with the agreement of the parties hereto, or as to whether either party has grounds hereunder entitling it to terminate this lease, it is mutually agreed that such differences, if they cannot be satisfactorily adjusted between the parties hereto within thirty (30) days, shall be submitted to a single arbitrator, if the parties hereto agree to one; otherwise, to a board of three arbitrators, one of whom shall be selected by each party within ten (10) days after such thirty-

---

[1] The original lease and the applicable amendments are collectively referred to as the "Lease."

> day period, and a third person shall be selected by these two; and the decision and award of such single arbitrator, if only one is used, or any two of such board, if three are used, as the case may be, shall be final and binding upon the said parties and their successors and assigns respectively and shall have the same force and effect as though such decision had been handed down by a court of final jurisdiction, the cost of arbitrator(s) to be shared equally by Landlord and Tenant. Each of the parties hereto covenants to abide by any arbitration decision.

(Pl.'s Ex. A, para. 25.)

On March 22, 2011, Euclid demanded arbitration in a letter to K-VA-T. (Pl.'s Ex. G.) Euclid sought to arbitrate the question of whether K-VA-T must continuously operate the Leased Premises as a food supermarket for the full term of the Lease. (*Id.*) When K-VA-T did not agree to arbitration, Euclid filed this action on April 1, 2011, pursuant to the Federal Arbitration Act, which allows "[a] party aggrieved by the alleged failure, neglect, or refusal or another to arbitrate under a written agreement for arbitration" to petition any United States district court with proper jurisdiction "for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C.A. § 4 (West 2009). [2]

---

[2] The Federal Arbitration Act, 9 U.S.C.A. §§ 1-14 (West 2009 & Supp. 2010), does not bestow federal jurisdiction over controversies touching arbitration, but rather, requires an independent jurisdictional basis. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983). Here, there is diversity jurisdiction.

K-VA-T argues that the arbitration clause in question does not cover the alleged disagreement.[3] It denies that the Lease contains a covenant of continuous operation and denies that the threatened action would be a breach of the lease.

The issues have been briefed and argued, and the action is ripe for decision.

II

Under the Federal Arbitration Act, when one a party refuses to arbitrate, it is the duty of the district court to determine whether the arbitration clause at issue applies to the disagreement between the parties. *See* 9 U.S.C.A. § 4.[4] A "party cannot be required to submit to arbitration any dispute which he has not agreed so to submit," *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960), and the question of whether a party has agreed to arbitrate a particular issue is a matter of contract interpretation. In making this determination, courts apply "ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). However, there is a heavy presumption of arbitrability, *Peoples Sec. Life Ins. Co. v.*

---

[3] K-VA-T also moved to dismiss the complaint on jurisdictional grounds, but the motion was withdrawn.

[4] For the Federal Arbitration Act to apply, two requirements must be met: (1) there was an agreement in writing providing for arbitration; and (2) the contract evidenced a transaction involving interstate commerce. *Am. Home Assurance Co. v. Vecco Concrete Const. Co. of Va.*, 629 F.2d 961, 963 (4th Cir. 1980). It is undisputed that both requirements are met here.

*Monumental Life Ins. Co.*, 867 F.2d 809, 812 (4th Cir. 1989), and any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25. Thus, "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers of Am.*, 363 U.S. at 582-83.

K-VA-T maintains that governing Virginia contract law establishes that the current disagreement is not appropriate for arbitration. It claims that the parties did not agree to arbitrate the alleged disagreement because, under Virginia contract law, "dispute" has been defined as a legally cognizable dispute. It asserts that the claim that the lease contains a covenant of continuous operation fails as a matter of law and therefore cannot give rise to a legally cognizable dispute. K-VA-T cites *Amchem Products, Inc. v. Newport News Circuit Court Asbestos Cases Plaintiffs*, 563 S.E.2d 739, 744 (Va. 2002), in which the Supreme Court of Virginia held that an arbitration provision covering "any dispute" only included legally cognizable disputes. There, the contract was modified to provide that if certain simple conditions were met, the plaintiffs could pursue a remedy in contract against the defendants. *Id.* at 741. When the conditions were met, the plaintiffs sued and the defendants sought to compel arbitration, arguing that the contract should be

interpreted to permit the plaintiffs to bring an action only against certain defendants. *Id.* at 742.

The disagreement at issue in *Amchem Products* was not a legally cognizable dispute because the clear language of the agreement gave the plaintiffs the right to pursue contract remedies against the defendants without qualification. *Id.* at 744. There could be no dispute about the clear and unambiguous language contained in the agreement. *Id.* The court concluded that

> a dispute that subjects a party to arbitration must be real and not imagined. A contrary conclusion would permit a litigant to assert the existence of a purported dispute when there is no basis in fact or law to do so, thereby depriving the opposing litigant of valuable contractual rights.

*Id.* at 744-45.

The circumstances here do not require the same result. First, it is important to note that when deciding whether a dispute is arbitrable, courts may not judge the merits of the claim put forward. *Gen. Drivers, Warehousemen & Helpers Local Union No. 509 v. Ethyl Corp.*, 68 F.3d 80, 83 (4th Cir. 1995). The inquiry required by *Amchem Products* is to ensure that the dispute is real and not imagined. Unlike the agreement in *Amchem Products*, the Lease is not clear about the existence or non-existence of a covenant of continuous operation. The Lease states that the Leased Premises "will be opened and used for a food supermarket." Euclid's claim that the Lease imposes a covenant of continuous operation is based in the

6

language of the Lease, which is open to interpretation.  Therefore, the defendant's argument is without merit.

IV

For the foregoing reasons, I will enter a separate order granting the relief sought herein and ordering the parties to submit the matter to arbitration in accord with Paragraph 25 of the Lease.  *See* 9 U.S.C.A. § 4.

DATED: May 26, 2011

/s/  James P. Jones
United States District Judge